**Manuel LLANES, Plaintiff,**

v.

**SEARS, ROEBUCK AND CO., Defendant.**

**No. 95–1768–Civ.**

United States District Court, S.D. Florida.

June 25, 1997.

Jay Mitchell Levy, Jay M. Levy, P.A., Miami, FL, for plaintiff.

Jeffrey Elliot Mandel, Muller, Mintz, Kornreich, Caldwell, Casey, Orlando, FL, for defendant.

### ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY FINAL JUDGMENT

UNGARO–BENAGES, District Judge.

THIS CAUSE is before the Court upon Defendant Sears, Roebuck and Company's ("Sears") Motion for Summary Judgment, filed October 31, 1996.

Plaintiff Manuel Llanes ("Llanes"), has sued Sears, his former employer, contending that Sears discriminated against him because of his disability in violation of Title I of the American with Disabilities Act ("ADA"), 42 U.S.C. § 12111 *et seq.* (*See* Plaintiffs' Complaint). Llanes further asserts that Sears' actions were intentionally committed to cause him severe emotional distress and were thereby violative of state law. (*Id.*) Sears denies that it discriminated against Llanes because of his disability. Specifically, Sears contends that Llanes is not disabled within the meaning of Title I of the ADA and that even if Llanes were disabled, Sears reasonably accommodated him and thereby discharged its duty under the ADA. (*See* Defendant's Motion for Summary Judgment, hereinafter "MSJ"). Sears also asserts that no reasonable factfinder could find that its conduct was sufficiently outrageous to establish a prima facie case of intentional infliction of emotional distress. (*Id.*) Accordingly, Sears moves for summary final judgment as to Llanes' claims.

THE COURT has considered the Motion, the responses, the pertinent portions of the record, and being otherwise fully advised in the premises, it is hereby

ORDERED and ADJUDGED that the Defendant's Motion for Summary Final Judgment is GRANTED for the reasons set forth below.

### I. *LEGAL STANDARD*

The procedure for disposition of a summary judgment motion is well established. Summary judgment is authorized only when:

the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party

is entitled to a judgment as a matter of law.

Fed.R.Civ.P. 56. The party moving for summary judgment has the burden of meeting this exacting standard. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157, 90 S.Ct. 1598, 1608, 26 L.Ed.2d 142 (1970). In applying this standard, the *Adickes* Court explained that when assessing whether the movant has met this burden, the courts should view the evidence and all factual inferences therefrom in the light most favorable to the party opposing the motion. All reasonable doubts about the facts should be resolved in favor of the non-movant. *Id.*

The party opposing the motion may not simply rest upon mere allegations or denials of the pleadings; after the moving party has met its burden of coming forward with proof of the absence of any genuine issue of material fact, the non-moving party must make a sufficient showing to establish the existence of an essential element to that party's case, and on which that party will bear the burden of proof at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317 106 S.Ct. 2548 (1986).

If the record presents factual issues, the court must not decide them; it must deny the motion and proceed to trial. *Environmental Defense Fund v. Marsh*, 651 F.2d 983, 991 (5th Cir.1981). Summary judgment may be inappropriate even where the parties agree on the basic facts, but disagree about the inferences that should be drawn from these facts. *Lighting Fixture & Elec. Supply Co. v. Continental Ins. Co.*, 420 F.2d 1211, 1213 (5th Cir.1969). If reasonable minds might differ on the inferences arising from undisputed facts, then the court should deny summary judgment. *Impossible Electronic Techniques, Inc. v. Wackenhut Protective Systems, Inc.*, 669 F.2d 1026, 1031 (5th Cir.1982).

Moreover, the party opposing a motion for summary judgment need not respond to it with any affidavits or other evidence unless and until the movant has properly supported the motion with sufficient evidence. *Adickes*, 398 U.S. at 160, 90 S.Ct. at 1610. The moving party must demonstrate that the facts underlying all the relevant legal questions raised by the pleadings or otherwise are not in dispute, or else summary judgment will be denied notwithstanding that the non-moving party has introduced no evidence whatsoever. *Brunswick Corp. v. Vineberg*, 370 F.2d 605, 611–12 (5th Cir.1967). The Court must resolve all ambiguities and draw all justifiable inferences in favor of the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255, 106 S.Ct. 2505, 2513, 91 L.Ed.2d 202 (1986).

## II. *FACTS*[1]

On or about August 8, 1975, Llanes began his employment with Sears. (Joint Pretrial Stip, hereinafter "Stip." at p. 12). From 1988 to 1992, Llanes worked as an outside commission sales associate selling roofing and aluminum products for Sears' Home Improvements organization. ("HIPS"). (*Id.*). On July 15, 1992, while at a customer's home, Llanes fell from a ladder and injured his left knee. (*Id.* at 13). This injury resulted in Llanes having operations on both of his knees and ultimately led to Llanes developing a back and hip problem. (*Id.*). Thereafter, Llanes filed a workers' compensation claim and, on February 28, 1994, entered into a settlement agreement with regard to the indemnity portion of his claim. (*Id.*). It was determined by his treating physicians that Llanes was disabled with a six percent permanent partial impairment to his body as a whole, (*see* P's MSJ at p. 2), and it was further determined that as a result of

---

1. When considering a motion for summary judgment, the Court views the evidence in the light most favorable to the non-moving party. *See e.g. Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255, 106 S.Ct. 2505, 2513, 91 L.Ed.2d 202 (1986). Accordingly, in considering Sears' Motion for Summary Judgment, the Court views the evidence in the light most favorable to Llanes.

his injuries, Llanes should not drive for more than thirty minutes successively. (*Id.* at 2–3; Stip. at 15).

Nevertheless, despite his injuries and his driving limitations, Llanes continued his employment with Sears as an outside sales associate. In April 1993, Sears reorganized the HIPS organization for which Llanes previously worked and created a new organization, Unit 5596, devoted to the sale of central air conditioning and heating units. (Stip at 15). Llanes, along with Frank Heiss, Ron Hawkins, George Guiterrez, and Ernie Anderson were the five sales associates who comprised Unit 5596. (*Id.* at 13–14). Unlike the HIPS organization, in which the sales associates worked out of a central facility, the sales associates in Unit 5596 worked out of their homes. (*Id.* at 14). In addition to any customer leads that they could generate on their own, the sales associates in Unit 5596 were assigned additional customer leads by lead distributors who were stationed in a Sears central office located in Winter Park, Florida. (*Id.*).

The sales leads were generated by potential customers responding to advertisements by calling toll-free telephone numbers and leaving their names, addresses, and telephone numbers. (*Id.* at 12). Pursuant to the standard lead distribution policy, these sales leads from both the Northern and Southern parts of Dade County would be assigned in equal numbers to each of the five outside sales associates. (*See id.*). As an outside sales associate in Unit 5596, Llanes essential job functions included traveling to and visiting customer homes throughout Dade County, assessing their needs, and selling them heating and cooling units. (*Id.* at 14). However, Llanes, who lived in South Dade County, informed Michael Gill ("Gill"), the Central Installation Manager, that due to his driving limitation, he could not accept sales leads from the Northern part of Dade County. (*See* P's MSJ at p. 3). Therefore, Llanes requested that any leads that he received in North Dade County be substituted with leads from South Dade County. (*See* P's Response to MSJ). Gill acceded in this request and instructed the lead distributors to assign to Llanes only leads from South Dade County and to substitute South Dade leads for any North Dade leads that would have otherwise been assigned to Llanes. (*See id.*).

This lead distribution policy, whereby Llanes received substituted South Dade County leads, lasted until October 1994. In October 1994, however, two of the other sales associates from Unit 5596, Ron Hawkins ("Hawkins") and Frank Heiss ("Heiss"), complained to Gill about the lead distribution policy. (Stip. at p. 4). According to Hawkins and Heiss, the South Dade leads were considerably more lucrative than the North Dade leads. Indeed, it is undisputed that the most affluent areas of the County are in South Dade and that most of the sales associates experienced less credit declines and better closing rates in South Dade. (*See* D's MSJ at p. 12; Statement Undisputed Facts at ¶ 12). Hawkins and Heiss complained that they had suffered a loss in their income as a result of the lead distribution policy and that it was unfair that Llanes received more than his fair share of the lucrative South Dade leads. Moreover, Hawkins and Heiss threatened to quit unless the distribution policy were equalized and, in fact, Hawkins and Llanes got into a heated confrontation over the distribution of the leads from South Dade. (*See Stip.*).

In response to the complaints by Hawkins and Heiss, Gill consulted Sears' Human Resource Manager Michael Stubbs ("Stubbs") about the lead distribution policy and, with Stubbs' approval, authored a memorandum dated October 22, 1994, to clarify the policy. (*Id.* at 4, 16; Exhibit E to P's Statement of Disputed Facts). Pursuant to the new policy, Llanes would no longer receive substituted South Dade leads, but rather, would only be given the South Dade leads that came up in his rotation. (*See id.*). Thus, under the new policy, each of the five sales associates

from Unit 5596 received an equivalent number of South Dade sales leads. (*Id.*).

Despite the implementation of the new policy, Gill attempted to accommodate Llanes by instructing the lead coordinators that Llanes would be excused from handling any North Dade leads in light of his driving restriction. (*Id.* at 16). Nevertheless, Llanes complained to Gill that the new lead distribution policy was inequitable in that he received fewer leads overall and requested that Gill again implement a policy whereby Llanes would be given additional South Dade leads. (*Id.*). Gill refused this request, but offered Llanes several other accommodations. (*See id.*). Llanes refused the other proposed accommodations offered by Gill and, instead, took a voluntary leave of absence from his employment with Sears in early 1995. (*Id.* at 9). Indeed, since at least April 1995, Llanes' psychiatric condition has deteriorated such that he is unable to perform the essential functions of his position at Sears even with his requested accommodation. (*Id.* at 17).

Llanes timely filed a charge of discrimination with the Equal Employment Opportunity Commission, received his right to sue letter on July 14, 1995, and filed the instant lawsuit on August 15, 1995. (Complaint at pp. 1, 4). In his Complaint, Llanes asserts in Count I that Sears discriminated against him because of his disability in violation of Title I of the American with Disabilities Act ("ADA"), 42 U.S.C. § 12111 *et seq.* (*See id.*). In Count II, Llanes further asserts that Sears' actions were intentionally committed to cause him severe emotional distress and were thereby violative of state law. (*Id.*) Sears denies that it discriminated against Llanes because of his disability. Specifically, Sears contends that Llanes is not disabled within the meaning of Title I of the ADA and that even if Llanes were disabled, Sears reasonably accommodated him and thereby discharged its duty under the ADA. (*See* Defendant's Motion for Summary Judgment, hereinafter "MSJ").

Sears also asserts that no reasonable fact-finder could find that its conduct was sufficiently outrageous to establish a prima facie case of intentional infliction of emotional distress. (*Id.*)

### III. *LEGAL ANALYSIS*

**A. Count I—Discrimination Based on Disability Under the ADA**

In his Complaint, Llanes asserts that Sears discriminated against him because of his disability in violation of the ADA. The ADA prohibits discrimination against disabled persons in the work place, stating that:

> [N]o covered entity shall discriminate against a qualified individual with a disability because of the disability of such individual in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment.

42 U.S.C. § 12112(a); 29 C.F.R. § 1630.4(i). The ADA defines a "qualified individual with a disability" as "an individual with a disability who, with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds or desires." 42 U.S.C. § 12112(a). In order to qualify for relief under the ADA, a plaintiff must begin by establishing a prima facie case. In order to establish a prima facie case of discrimination based on disability under the ADA, the plaintiff must demonstrate:

(1) that he is a member of the protected class, i.e. that he is a disabled person within the meaning of the ADA;

(2) that he was qualified for the job, i.e. that he could, with or without reasonable accommodation, perform the essential functions of the job;

(3) that if an accommodation was necessary, he identified for the employer a reasonable accommodation; and

(4) that he was discriminated against because of his disability.

See e.g. *Willis v. Conopco, Inc.,* 108 F.3d 282, 283 (11th Cir.1997); *Harris v. H & W Contracting Company,* 102 F.3d 516 (11th Cir.1996); *Pritchard v. Southern Company Services,* 92 F.3d 1130, 1132 (11th Cir. 1996).[2] "As with discrimination cases generally, the plaintiff at all times bears the ultimate burden of persuading the trier of fact that he has been the victim of illegal discrimination based on his disability." *White v. York International Corporation,* 45 F.3d 357 (10th Cir.1995), *citing St. Mary's Honor Ctr. v. Hicks,* 509 U.S. 502, 113 S.Ct. 2742, 125 L.Ed.2d 407 (1993).

### 1. *Disability Under the ADA*

 In order to establish the first element of his prima facie case, Llanes must demonstrate that he was disabled within the meaning of the ADA. *See id.* "Disability" is defined as:

(A) a physical or mental impairment that substantially limits one or more of the major life activities of such individual;

(B) a record of such impairment;

(C) being regarded as having such an impairment.

42 U.S.C. § 12102(2); *Harris,* 102 F.3d at 518–520. However, "[a] physical impairment, standing alone, . . . is not necessarily a disability as contemplated by the ADA." *Gordon,* 100 F.3d at 911 (citations omitted). To constitute a disability, "the impairment [must] substantially limit one or more of the individual's major life activities." *Id.* (citations omitted). The term 'major life activities' "is defined as 'functions such as caring for oneself, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning, and working.'" *Id.* (quoting 29 C.F.R. § 1630.2(I)).

**2.** In addition, a plaintiff must demonstrate that the employer had either actual or constructive knowledge of the disability or considered the employee to be disabled." *Gordon v. E.L. Hamm & Assocs., Inc.,* 100 F.3d

 If the Plaintiff is not "substantially limited with respect to any other major life activity [then his] ability to perform the major life activity of working should be considered." 29 C.F.R. § 1630, App. § 1630.2(j). However, "the 'inability to perform a single, particular job does not constitute a substantial limitation in the major life activity of working.'" *Gordon v. E.L. Hamm & Assocs., Inc.,* 100 F.3d 907, 912 (11th Cir.1996) (citing 29 C.F.R. § 1630.2(j)(3)(I)). Instead, "[t]o demonstrate that an impairment 'substantially limits' the major life activity of working, an individual must show 'significant[ ] restrict[ions] in the ability to perform either a class of jobs or a broad range of jobs in various classes as compared to the average person having comparable training, skills, and abilities." *Gordon,* 100 F.3d at 912 (citing 29 C.F.R. § 16302(j)(3)(I)); *Pritchard v. Southern Company Services,* 92 F.3d 1130, 1133 (11th Cir.1996).

 Further, to determine whether an impairment substantially limits a major life activity, the EEOC has provided that courts *should* consider three factors, and *may* consider three additional factors. *See Gordon,* 100 F.3d at 911. The three factors which courts should consider are:

(1) the nature and severity of the impairment;

(2) the duration or expected duration of the impairment; and

(3) the permanent or long term impact, or the expected permanent or long term impact of or resulting from the impairment.

*Gordon v. E.L. Hamm & Assocs., Inc.,* 100 F.3d 907, 911 (11th Cir.1996) (citing, *inter alia,* 29 C.F.R. § 1630.2(j)(2)). The three factors which the Court may also consider are:

907, 910 (11th Cir.1996) (citations omitted). However, there is no issue in the case at bar as to whether the employer had knowledge of Llanes alleged disability.

(4) the geographical area to which the individual has reasonable access;

(5) the job from which the individual has been disqualified because of an impairment, and the number and types of jobs utilizing similar training, knowledge, skills, or abilities, within that geographical area, from which the individual is also disqualified because of the impairment; and

(6) the job from which the individual has been disqualified because of an impairment, and the number and types of other jobs not utilizing similar training, knowledge, skills, or abilities within that geographical region from which the individual is also disqualified because of the impairment.

*Gordon,* 100 F.3d at 912 (citing 29 C.F.R. § 1630.2(j)(3)(ii); *Ellison v. Software Spectrum, Inc.,* 85 F.3d 187, 190 (5th Cir.1996); *Fussell v. Georgia Ports Authority,* 906 F.Supp. 1561 (S.D.Ga.1995), *aff'd.* 106 F.3d 417 (11th Cir.1997).

In this case, Llanes contends that "driving" is a major life activity and that he is substantially limited with regard to the major life activity of "driving." Llanes further contends that even if the Court finds that 'driving" is not a "major life activity," the Court should find that Llanes is substantially limited with regard to the major life activity of "working." (*See* P's Response to MSJ; P's MSJ). Llanes has presented evidence that he is unable to drive for prolonged periods of time and that such driving was an essential requirement of his job with Sears. (*See* P's MSJ at pp. 6–7) (citations omitted). Further, through the affidavit of Vocational Rehabilitationist Leslie Delman, Llanes has presented evidence that Llanes' disability limits his ability to work in a broad range of jobs and therefore limits him in the major life activity of working within the meaning of 29 C.F.R. § 1630.2(j)(3)(I). (*See id.*). Assuming, without deciding, that Llanes has demonstrated the existence of a genuine issue of material fact that he is disabled within the meaning of

the ADA, the Court finds that Sears still is entitled to summary judgment on Llanes' ADA claim because Llanes fails to demonstrate the existence of a genuine issue of material fact as to whether Sears provided or offered to provide to Llanes a reasonable accommodation.

## 2. *Reasonable Accommodation Under the ADA*

If an employee is disabled under the ADA, an employer discriminates against that employee by:

not making reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual with a disability who is an applicant or employee, unless such [employer] can demonstrate that the accommodation would impose an undue hardship on the operation of the business.

42 U.S.C. § 12112(b)(5)(A). The ADA defines "reasonable accommodation" as including:

(A) making existing facilities used by employees readily accessible to and usable by individuals with disabilities; and

(B) job restructuring, part-time or modified work schedules, reassignment to a vacant position, acquisition or modification of equipment or devices, ... and other similar accommodations for individuals with disabilities.

42 U.S.C. § 12111(9).

As previously stated, Llanes, in order to establish a prima facie case of disability discrimination under the ADA, must demonstrate that he identified for the employer an accommodation that would enable him to perform the essential functions of his job and that such proposed accommodation was reasonable. *See Willis v. Conopco, Inc.,* 108 F.3d 282, 283 (11th Cir. 1997).

In the case at bar, it is undisputed that Llanes identified for Sears an accom-

modation that would enable him to perform the essential functions of his job. Indeed, Llanes asserts that Sears actually gave him the requested accommodation of substituting South Dade sales leads for North Dade sales leads and that Sears discriminated against him because of his disability by failing to continue this reasonable accommodation. (*See infra.* Part II of this Order; P's MSJ at 13). However, it is also undisputed that Llanes has failed to present any evidence that this proposed accommodation was reasonable and therefore fails to establish a prima facie case. *See Willis v. Conopco, Inc.*, 108 F.3d 282, 283 (11th Cir.1997). In fact, Sears has presented uncontroverted evidence that the accommodation sought by Llanes was not reasonable. As previously set forth in this Order. Sears contends that it ended the accommodation whereby Llanes received South Dade leads in substitution for North Dade leads because two of the five sales associates from Unit 5596. Ron Hawkins and Frank Heiss, complained to the supervisor Gill about the lead distribution policy. (Stip. at p. 4). According to Hawkins and Heiss, the South Dade leads were considerably more lucrative than the North Dade leads. Hawkins and Heiss complained that they had suffered a loss in their income as a result of the lead distribution policy and that it was unfair that Llanes received more than his fair share of the lucrative South Dade leads. Moreover, Hawkins and Heiss threatened to quit unless the distribution policy were equalized and, in fact, Hawkins and Llanes got into a heated confrontation over the distribution of the leads from South Dade. (*See id.*).

Therefore, in response to the complaints by Hawkins and Heiss, Gill consulted Sears' Human Resource Manager Michael Stubbs about the lead distribution policy and, with Stubbs' approval, changed the policy and thereby ended Llanes alleged reasonable accommodation. Sears has offered legitimate reasons why it ended the accommodation previously afforded to Llanes. However, Llanes has offered no evidence that Sears could not justifiably rely on these reasons in deciding to end the accommodation or that these reasons were pretextual. Llanes cites no authority for the proposition that an employer is forever precluded from taking away an accommodation that it has given to a disabled employee if the employer later determines that the accommodation adversely impacts other employees. Llanes merely argues that continuing the accommodation would not violate the "rights" of his co-workers because they were not union members subject to a collective bargaining agreement, but rather, were at will employees without rights and could be terminated at any time. (*See* P's response to MSJ at pp. 17–18). Llanes further argues that the fact that two out of the five salesmen in Unit 5596 threatened to quit if the lead distribution policy were not equalized is not significant because "there is no evidence that the employees were not readily replaceable from the open labor market." (*Id.* at 18).

■■■■■ Llanes' arguments, however, are unpersuasive. Llanes cannot cite to any authority for his absurd arguments that an employer can and should offend or alienate other valued employees in order to accommodate a disabled employee so long as those rights or benefits are not vested contractual rights. Llanes fails to understand that "the ADA does not require that employers provide greater benefits to disabled employees than it grants to its other employees," whether or not those benefits are vested contractual rights. *Dockery v. North Shore Medical Center*, 909 F.Supp. 1550, 1561 (S.D.Fla. 1995). "That is because the ADA 'prohibits discrimination against qualified individuals, no more and no less.'" *Fussell v. Georgia Ports Authority*, 906 F.Supp. 1561 (S.D.Ga.1995), *aff'd.* 106 F.3d 417 (11th Cir.1997). Accordingly, where his fellow employees reasonably perceive the South Dade sales leads to be more lucrative, Llanes cannot claim that he, as a disabled employee, has a greater right

than his fellow employees to receive those more lucrative sales leads and that his non-disabled fellow employees should be adversely impacted. Therefore, the Court concludes that Llanes' requested accommodation that he receive more than his share of the South Dade sales leads is, as a matter of law, unreasonable.

 Even assuming that Llanes request were reasonable, however, Sears still would be entitled to summary judgment because, while not giving Llanes the accommodation of his choice, Sears fulfilled its duty under the ADA by offering Llanes several reasonable accommodations. An employee cannot make his employer provide a specific accommodation if another reasonable accommodation is offered. *Hankins v. The Gap, Inc.*, 84 F.3d 797, 800–02, (6th Cir.1996), *citing Ansonia Bd. of Education v. Philbrook*, 479 U.S. 60, 68–69, 107 S.Ct. 367, 371–72, 93 L.Ed.2d 305 (1986). Although an employee is not required to accept an offered accommodation, "if such individual rejects a reasonable accommodation ... the individual will not be considered a qualified individual with a disability. 29 C.F.R. § 1630.9(d).

 In the instant case, Sears offered several alternative reasonable accommodations. Gill attempted to accommodate Llanes by instructing the lead coordinators that, despite the fact that handling sales leads from all of Dade County was an essential part of Llanes job, Llanes would be excused from handling any North Dade leads in light of his driving restriction. (*See infra.* Part II of this Order). Indeed, in support of the reasonableness of this accommodation, Sears points to the uncontroverted fact that this accommodation allowed Llanes to avoid driving into North Dade County, as requested, while still allowing Llanes to remain economically competitive with his co-workers. It is uncontroverted that in December 1994, a time during which Llanes was only receiving his fair share of South Dade leads and no North Dade leads, Llanes outsold three of his four co-workers in Dade County. (D's MSJ at p. 11).

Further, Sears offered Llanes several other reasonable accommodations, all of which Llanes categorically refused. For example, Sears offered to allow Llanes to rest in between driving segments such that he could handle leads from more of Dade County and to allow Llanes to make the determination of which leads to accept on a daily basis depending on his condition. (*Id.* at 14). Additionally, Sears considered obtaining and installing hand controls for Llanes' vehicle in order to enable Llanes to drive greater distances, but Llanes refused this offer as well. (*Id.*). Moreover, Sears offered Llanes an in store sales position in a store close to Llanes' home which would have allowed him to earn a salary plus commission while eliminating any driving requirement attached to his employment. (*Id.*). Llanes rejected the offer, stating, *inter alia*, that he could not stand for the long periods of time required by an in-store sales position. Even though Llanes never provided any medical evidence in support of the proposition that he could not stand for long periods of time. Sears offered to further accommodate Llanes by providing him with a stool or a wheelchair while in the store. Llanes rejected these accommodations as well.

In short, Llanes refused to consider any of Sears' proposed reasonable alternatives and, instead, insisted that he be provided with the accommodation of his choice. The ADA, however, does not give a disabled employee such a right. As previously stated, an employee cannot make his employer provide a specific accommodation if another reasonable accommodation is offered. *Hankins v. The Gap, Inc.*, 84 F.3d 797, 800–02, (6th Cir.1996), *citing Ansonia Bd. of Education v. Philbrook*, 479 U.S. 60, 68–69, 107 S.Ct. 367, 371–72, 93 L.Ed.2d 305 (1986); *see also Kemer v. Johnson*, 900 F.Supp. 677 (S.D.N.Y.1995) (holding that once a reasonable accommodation is made, the employer has fulfilled its obligation under the ADA), *aff'd.*, 101 F.3d 683 (2d

Cir.1996), *cert. denied*, —— U.S. ——, 117 S.Ct. 441, 136 L.Ed.2d 338 (1996). In the case at bar, it is undisputed that Sears offered reasonable accommodations to Llanes and thereby discharged its duty under the ADA.

**B. Count II—Intentional Infliction of Emotional Distress Under State Law**

By this Order, the Court is granting Defendant Sears' Motion for Summary Judgment as to Llanes' claim of discrimination under the ADA. Therefore, the only claim remaining in this matter is the state law claim against Sears for intentional infliction of emotional distress under state law. Pursuant to 28 U.S.C. § 1367(c)(3), and in consideration of the interests of judicial economy, convenience, and fairness to the litigants, this Court declines to exercise supplemental jurisdiction over the remaining state law claim against Sears.

**IV. *CONCLUSION***

Based on the foregoing analysis and findings, it is hereby

ORDERED AND ADJUDGED that Defendant's Motion for Summary Final Judgment is GRANTED as to Count I which asserts a claim under Title I of the American with Disabilities Act, 42 U.S.C. § 12111 *et seq.* It is further

ORDERED AND ADJUDGED that Count II of Plaintiff's Complaint, which asserts a claim for intentional infliction of emotional distress under state law, is hereby DISMISSED. It is further

ORDERED AND ADJUDGED that all other motions currently pending in the above-styled matter are DENIED AS MOOT.

DONE AND ORDERED.