United States Court of Appeals,

Eleventh Circuit.

No. 96-8395.

Lynda L. WILLIS, Plaintiff-Appellant,

v.

CONOPCO, INC., a.k.a. Lever Brothers Company, a.k.a. Unilever, Defendant-Appellee.

March 25, 1997.

Appeal from the United States District Court for the Northern District of Georgia. (No. 4:94-cv-200-HLM), Harold L. Murphy, District Judge.

Before EDMONDSON and BLACK, Circuit Judges, and HILL, Senior Circuit Judge.

PER CURIAM:

Plaintiff appeals the district court's grant of summary judgment on her claim under the Americans with Disabilities Act ("ADA"). Plaintiff argues that the district court erred in requiring her to produce evidence sufficient to establish a triable issue on the existence of a reasonable accommodation for her disability. We hold that an ADA plaintiff (1) as part of her burden of production, must identify an accommodation that would allow her to perform her job duties and (2) as a part of her burden of proving her case, must establish that such an accommodation is reasonable. As Plaintiff has failed to produce evidence of such an accommodation, we affirm the district court's judgment.

I.

Plaintiff Lynda Willis was employed by Defendant Lever Brothers in its Carterville plant. Plaintiff initially worked in the packing area where laundry detergents are packaged for

distribution and sale.  In March 1992, Plaintiff reported experiencing a persistent cough and skin rash.  The plant physician prescribed treatment, and Plaintiff was placed on restricted duty to limit her exposure to the detergent.  When blood tests revealed that Plaintiff was sensitive to certain enzymes contained in the detergent, the employer temporarily reassigned Plaintiff to an administrative position in the plant's safety office.  Upon confirming Plaintiff's sensitivity, the employer monitored the air quality of its warehouse and spare part areas to determine where Plaintiff could safely work.

After determining that the spare parts area had reduced levels of enzymes which it considered to be safe, the employer reassigned Plaintiff to the spare parts area.  In addition to reassigning Plaintiff, the employer (1) directed her to wear a mask when crossing the packing area floor (which had relatively higher levels of enzymes), (2) gave her a pass to park her car near a door which allowed her to avoid the packing area floor, (3) excused her from performing housekeeping audits in areas with greater levels of enzymes, (4) excused her from meetings in higher enzyme areas and (5) continued to monitor—as it had since Plaintiff first reported a persistent cough and skin rash—Plaintiff's pulmonary functions.

In October 1993, Plaintiff began a medical leave of absence for foot surgery—a condition unrelated to this lawsuit.  In January 1994, Plaintiff's foot surgeon released her to return to work without restriction.  The next day she notified her employer that

she had seen another physician, Dr. Edelson,[1] who advised her not to return to work due to the possibility of enzyme exposure. Edelson provided to Defendant a letter saying as follows:

> [Plaintiff] has been exposed to various chemicals in the work environment at [Defendant' plant].... She definitely has immune system abnormalities and I think, she should stop working at this [ ] plant. There is nowhere within that building that she would be safe.... I reiterate: She should not be working in that building.

At this point, Plaintiff refused to return to work in the spare parts area and requested her employer either (1) to reassign her to a "safe work area" or (2) to enclose and to air condition the spare parts area. Defendant then arranged (and paid for) Plaintiff to be examined by a pulmonologist, Dr. Duffell.

In February 1994, Duffell sent Defendant a report in which he concluded that Plaintiff "was fully capable of continuing to work in the plant." Shortly thereafter, Defendant sent Plaintiff a letter directing her to return to work on her next scheduled shift or to be deemed to have abandoned her job and to have her employment terminated. In response, Plaintiff had Edelson send a letter, via facsimile, to Defendant indicating "she is not to come into contact with any toxic chemical substances.... My suggestion is that she find some legal way to attain disability because of the current circumstances." When Plaintiff did not return to work, Defendant terminated her employment.

Plaintiff brought the present suit alleging a cause of action

---

[1]Dr. Edelson practices "environmental medicine." As the district court noted, quoting Edelson's deposition, "[e]nvironmental medicine is not considered mainstream medicine and is not generally accepted as scientifically valid by "mainstream' medical community."

under the ADA. After completing discovery, the parties filed competing summary judgment motions. The district court granted Defendant's motion for summary judgment and denied Plaintiff's motion for partial summary judgment as moot. The district court assumed that Plaintiff was an otherwise qualified individual with a disability and then held that no triable issue of material fact existed on whether Defendant could have made reasonable accommodations for Plaintiff's disability.

## II.

We review the grant or denial of summary judgment *de novo,* applying the same standard employed by the district court. *Parks v. City of Warner Robins, GA,* 43 F.3d 609, 612-613 (11th Cir.1995). An "accommodation" is "reasonable"—and, therefore, required under the ADA—only if it enables the employee to perform the essential functions of her job. 29 C.F.R. § 1630.2(*o*)(ii). Reassignment to another position is a required accommodation only if there is a vacant position available for which the employee is otherwise qualified. 42 U.S.C. § 12111(9)(B).

According to Plaintiff, her employer failed even to attempt to make reasonable accommodations for her condition: she says Defendant neither transferred her nor attempted to make the spare parts area safe for her. Plaintiff also says that the district court erred by placing the burden on her to request a specific accommodation. Plaintiff says the ADA merely requires an employee to request accommodation—as an abstract concept—after which the employer becomes obligated to enter into a "flexible, interactive process" involving both the employer and the employee. Plaintiff

points us to *Beck v. University of Wisconsin Bd. of Regents,* 75 F.3d 1130, 1135 (7th Cir.1996) ("[T]he regulations envision an interactive process that requires participation by both parties: "[T]he employer must make a reasonable effort to determine the appropriate accommodation. The appropriate reasonable accommodation is best determined through a reasonable process that involves both the employer and the [employee] with a disability.' ") (quoting 29 C.F.R. § 1630.2(*o*)(3) (1995)).

Though the issue of which party has the burden of proposing a concrete accommodation and establishing that the particular accommodation is reasonable is one of first impression for us, other circuits have ruled on the issue. We also note that our recent opinion in *Moses v. American Nonwovens, Inc.,* 97 F.3d 446, 448 (11th Cir.1996) (*per curiam* ), though not directly on point, provides us with significant guidance in deciding the question.

The D.C. Circuit, interpreting almost identical language in regulations promulgated under the Rehabilitation Act, has established the following approach to the reasonable accommodation issue:

> These cases deal with objective claims that may be tested through the application of traditional burdens of proof.... [A] plaintiff must establish that (a) he is handicapped but, (b) with reasonable accommodation (which he must describe), he is able to perform the "essential functions" of the position he holds or seeks. *See* 29 C.F.R. § 1613.702(f); *see also id.* § 1613.704(a), (b). As in the usual case, it would then be up to the employing agency to refute that evidence. The burden, however, remains with the plaintiff to prove his case by a preponderance of evidence.

*Barth v. Gelb,* 2 F.3d 1180, 1186 (D.C.Cir.1993). We agree that this statement of an ADA plaintiff's burdens of production and persuasion (which tests plaintiff's claim "through the application

of traditional burdens of proof") is the appropriate one.

Even assuming an employer has an affirmative obligation—absent an employee's suggestion for a specific accommodation—to engage in the interactive process Plaintiff advocates, we have held that, where a plaintiff cannot demonstrate "reasonable accommodation," the employer's lack of investigation into reasonable accommodation is unimportant. *Moses v. American Nonwovens, Inc.,* 97 F.3d 446, 448 (11th Cir.1996). In *Moses,* we rejected an employee's claim (under the ADA) that his employer not only failed to make reasonable accommodations for his disability, but also failed—before terminating the employee's employment—even to consider the available options for accommodating the disability. *Id.* ("[Plaintiff's] primary arguments are that [the employer] failed to investigate his condition and failed to consider possible accommodations.") We acknowledged that we were troubled by evidence that the employer had failed to investigate accommodating the plaintiff. *Id.* ("We are more troubled by the evidence that [the employer] failed to investigate possible accommodations. No language in the ADA mandates a pretermination investigation, but the EEOC advises that "the employer must determine whether a reasonable accommodation would ... eliminate' the direct threat. 29 C.F.R. § 1630.2(r), 1630.9, Interp. Guidance.") We determined, however, that the ADA provides no cause of action for "failure to investigate" possible accommodations, and that:

> We are persuaded that [the employer's] failure to investigate did not relieve [plaintiff] of his burden of producing probative evidence that reasonable accommodations were available. A contrary holding would mean that an employee has an ADA cause even though there was no possible way for the employer to accommodate the employee's disability.

> Stated differently: An employer would be liable for not investigating even though an investigation would have been fruitless. We are confident that although the ADA does not mandate a pretermination investigation, the possibility of an ADA lawsuit will, as a matter of practice, compel most employers to undertake such an investigation before terminating a disabled employee.

*Id.*

To the extent that the Seventh Circuit's *Beck* opinion can be interpreted (as Plaintiff says) to require an "interactive process" such that an employer can be held liable merely for failing to engage in the process itself (regardless of whether a "reasonable accommodation" could in reality have been made for the employee), *Moses* holds otherwise. And, to the extent that *Beck* can be interpreted as requiring that the "interactive process" envisioned in the regulations carry over to a plaintiff's burden of production in court (thus, relieving the plaintiff-employee of her "burden of producing evidence that reasonable accommodations were available"), *Moses* holds otherwise.

We also do not believe an approach as punitive in nature as Plaintiff's view of an "interactive process" requirement comports with the basic goal of the ADA, which we understand to be remedial in nature—ensuring that those with disabilities can fully participate in all aspects of society, including the workplace. *See e.g.* 42 U.S.C. § 12101(a)(8) ("[T]he Nation's proper goals regarding individuals with disabilities are to assure equality of opportunity, full participation, independent living, and economic self-sufficiency for such individuals;....") The ADA, as far as we are aware, is not intended to punish employers for behaving callously if, in fact, no accommodation for the employee's

disability could reasonably have been made.

We know that some courts have required the plaintiff (as part of her initial burden of production) to introduce evidence of the existence of an accommodation, but have combined the questions of (a) whether the accommodation is reasonable and (b) whether it will impose an undue hardship on the employer into one question. Then the burden of proof (or the "burden of nonpersuasion") on the one question has been put on the defendant-employer. *See e.g. Borkowski v. Valley Cent. School Dist.,* 63 F.3d 131, 138 (2d Cir.1995) ("[I]n practice meeting the burden of nonpersuasion on the reasonableness of the accommodation and demonstrating that the accommodation imposes an undue hardship amount to the same thing.") (interpreting regulations promulgated pursuant to the Rehabilitation Act). Such an approach confuses an element of the plaintiff's case (reasonable accommodation) with an affirmative defense (undue burden) and effectively relieves the plaintiff of her obligation to prove her case. *See* 42 U.S.C. § 12112(b) ("As used in subsection (a) of this section, the term "discriminate' includes—... (5)(A) not making reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual with a disability who is an applicant or employee, unless such covered entity can demonstrate that the accommodation would impose an undue hardship on the operation of the business of such covered entity; ...")

We doubt that, in providing for a private right of action to enforce the rights created by the ADA, Congress intended such a departure from the traditional rules and norms of litigation. This

doubt is especially strong where an established body of civil rights jurisprudence (which employed conventional burdens of production and proof for plaintiffs and defendants) existed, and Congress expressly relied on existing civil right laws in creating the pertinent private right of action. *See generally* 42 U.S.C. § 12117(a) ("The powers, remedies, and procedures set forth in sections 2000e-4, 2000e-5, 2000e-6, 2000e-8, and 2000e-9 of this title shall be the powers, remedies, and procedures this subchapter provides to the Commission, to the Attorney General, or to any person alleging discrimination on the basis of disability in violation of any provision of this chapter, or regulations promulgated under section 12116 of this title, concerning employment."). *See also St. Mary's Honor Center v. Hicks,* 509 U.S. 502, 506-07, 113 S.Ct. 2742, 2747, 125 L.Ed.2d 407 (1993) ("It is important to note, however, that although the *McDonnell-Douglas* presumption shifts the burden of *production* to the defendant, "[t]he ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against remains at all times with the plaintiff.' ") (quoting *Texas Dept. of Community Affairs v. Burdine,* 450 U.S. 248, 253, 101 S.Ct. 1089, 1093, 67 L.Ed.2d 207 (1981)).

That the evidence probative of the issue of whether an accommodation for the employee is reasonable will often be similar (or identical) to the evidence probative of the issue of whether a resulting hardship for the employer is undue, does not change the fact that establishing that a reasonable accommodation exists is a part of an ADA plaintiff's case, whereas undue hardship is an

affirmative defense to be pled and proven by an ADA defendant.[2]

Turning to the evidence before the district court in this case, Plaintiff presented no competent evidence that *any* alternative position existed (vacant or otherwise)—regardless of whether she was qualified for it. In fact, Plaintiff's physician indicated that "[t]here is nowhere within that building that she would be safe." The only evidence Plaintiff offered that a vacant position existed at all was a hearsay statement, contained in her affidavit, that she ran into a "temporary service girl" who informed her that "she was hired into the vacant office position [Plaintiff] had [temporarily] had [in the plant's safety office] after [Defendant] had terminated me." The district court struck the statement as inadmissible hearsay, and Plaintiff does not appeal this evidentiary ruling. The district court also pointed out that Plaintiff's own testimony contradicted her claim that such a position would have accommodated her condition. Also, the affidavit does not show that the vacancy (if there was a vacancy) existed when Plaintiff was let go.

As for Plaintiff's claim that it would have been a reasonable accommodation for Defendant to enclose and to air-condition the

---

[2]These two issues are not exactly the same: the question of whether an accommodation is reasonable (though it must be determined within a given set of specific facts) is more of a "generalized" inquiry than the question of whether an accommodation causes a "hardship" on the particular employer that is undue. *See Barth,* 2 F.3d at 1187 ("As a general matter, a reasonable accommodation is one employing a *method of accommodation* that is reasonable in the run of cases, whereas the undue hardship inquiry focuses on the hardships imposed by the plaintiff's preferred accommodation in the context of the particular agency's operations.") (interpreting Rehabilitation Act regulations) (emphasis in original) (citations omitted).

spare parts area, she testified, in her deposition, that she "still [would] have been exposed to powder" and that no way existed that she "could work in the spares department and not be exposed to enzymes."  She submitted no evidence to contradict her testimony (or that of her doctor) on this point.

Plaintiff says that, as an employee, she was in no position to know what specific accommodations were available or how reasonable they were.  Whatever may be said of her "burden" as an employee in the day-to-day workplace seeking an accommodation for her condition, Plaintiff—as a litigant bringing an ADA action—has failed to produce evidence (after the *completion* of discovery) of the existence of any "accommodation" at all, "reasonable" or otherwise.

Plaintiff also says that she was subjected to a discriminatory termination in that she was discharged in retaliation for requesting an accommodation or for seeking to file for worker's compensation benefits.  The district court held that Defendant had articulated a legitimate, nonretaliatory reason for the discharge—Plaintiff refused to report to work—and that her failure to present evidence that Defendant's proffered reason was pretextual requires summary judgment. *See e.g. Jackson v. Veterans Admin.,* 22 F.3d 277, 279 (11th Cir.1994) ("one who does not come to work cannot perform any of his job functions, essential or otherwise") (quotation marks and citation omitted).

Plaintiff seeks to distinguish *Jackson* by pointing out that the disability involved there resulted in the employee being absent from the office in an unpredictable way.  Plaintiff also says that

Defendant's failure in this case to provide her with worker's compensation forms (despite three requests to do so) and the fact that she sought such benefits shortly before being terminated, raises a triable issue of fact. Assuming for the sake of argument that Defendant's failure to provide such forms does raise a triable issue in the first instance (that is, assuming that Plaintiff has met her burden of coming forward with evidence to raise an inference of retaliation), Plaintiff fails to offer evidence to raise an inference that Defendant's offered explanation for the termination (Plaintiff refused to come to work) was mere pretext.

When an employee refuses to show up for work after being informed that her failure to do so will result in the loss of her job, the employer has presented a valid, nonretaliatory reason for terminating that employee. *Id.* at 278 ("The [employer] does not dispute that [the employee] performs these tasks satisfactorily *when he is at work.* ... [The employee's] presence on a routine basis is also an essential element of the job that he has failed to satisfy.") (emphasis in original).

AFFIRMED.