Jacqueline M. PALEOLOGOS, Plaintiff,

v.

REHAB CONSULTANTS, INC., d/b/a/ Atlanta, Comprehensive Rehab, Defendant.

No. Civ.1:96–CV–2193–JEC.

United States District Court, N.D. Georgia, Atlanta Division.

Jan. 16, 1998.

Howard Raymond Evans, Shaw & Evans, Atlanta, GA, for Plaintiff.

Robert James Hunter, Brian Keith Jackson, Hendrick & Hunter, Atlanta, GA, for Defendant.

## ORDER

CARNES, District Judge.

This case is presently before the Court on defendant's Motion for Summary Judgment [10]. The Court has reviewed the record and the arguments of the parties and, for the reasons set out below, concludes that defendant's motion should be **GRANTED.**

## BACKGROUND

Plaintiff began working for defendant on July 24, 1994, as Regional Clinical Coordinator. (Pl. Resp. to Def.Mot. for Summ.J. [11] at 2.) Plaintiff's job duties in this position included supervising the nursing staff, marketing defendant's programs, conducting public relations activities with nursing homes and retirement centers, and coordinating patient therapy. (Depo. of Jacqueline Paleologos at 22.) These duties required plaintiff to spend the majority of her time at work visiting patients and retirement homes.

Plaintiff requested and was granted a medical leave of absence in the early part of 1995 for back surgery. Then, in October of 1995, plaintiff requested a two-week leave of absence for a "stress related mental condition which [plaintiff] attributed to work related stress." (Pl. Resp. to Def.Mot. for Summ.J. [11] at 2.) Defendant granted plaintiff's request; however, upon expiration of the two week period, plaintiff demanded a four-week extension of her leave of absence. (Paleologos Depo. at 16.) Plaintiff informed management that her most optimistic prediction of her ability to return to work was at the end of the third week of the extension, and that she would not be able to work on a reduced schedule during this time. (*Id.*) In response to this information, defendant terminated plaintiff's employment on November 8, 1995.

Plaintiff claims that defendant's termination of her employment violated the Americans with Disabilities Act ("ADA"), the Family Medical Leave Act ("FMLA"), and O.C.G.A. §§ 51–1–6 and 51–1–8. Defendant moves for summary judgment on all of the claims in plaintiff's complaint.

## DISCUSSION

### I. *Summary Judgment Standard*

Summary judgment is not properly viewed as a device that the trial court may, in its discretion, implement in lieu of a trial on the merits. Instead, Rule 56 of the Federal Rules of Civil Procedure *mandates* the entry of summary judgment against a party who fails to make a showing sufficient to establish the existence of every element essential to that party's case on which that party will bear the burden of proof at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). In such a situation, there can be no genuine issue as to any material fact, as a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial. *Id.* at 322–23.

The movant bears the initial responsibility of asserting the basis for his motion. *Id.* at 323; *Apcoa, Inc. v. Fidelity Nat'l Bank*, 906 F.2d 610, 611 (11th Cir.1990). However, the movant is not required to negate his opponent's claim. The movant may discharge his burden by merely " 'showing'—that is, pointing out to the district court—that there is an absence of evidence to support the nonmoving party's case." *Celotex*, 477 U.S. at 325. After the movant has carried his burden, the nonmoving party is then required to "go beyond the pleadings" and present competent evidence[1] designating " 'specific facts showing that there is a genuine issue for trial.' " *Id.* at 324 (quoting FED.R.CIV.P. 56(e)). While the court is to view all evidence and factual inferences in a light most favorable to the nonmoving party, *Samples v. City of Atlanta*, 846 F.2d 1328, 1330 (11th Cir. 1988), "the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

A fact is material when it is identified as such by the controlling substantive law. *Id.* at 248. An issue is genuine when the evidence is such that a reasonable jury could return a verdict for the nonmovant. *Id.* at 249–50. The nonmovant "must do more than

---

1. The nonmoving party may meet its burden through affidavit and deposition testimony, answers to interrogatories, and the like. *Celotex*, 477 U.S. at 324.

simply show that there is some metaphysical doubt as to the material facts.... Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" *Matsushita Electric Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586–87, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986) (citations omitted). An issue is not genuine if it is unsupported by evidence, or if it is created by evidence that is "merely colorable" or is "not significantly probative." *Anderson,* 477 U.S. at 249–50. Thus, to survive a motion for summary judgment, the nonmoving party must come forward with specific evidence of *every* element material to that party's case so as to create a genuine issue for trial.

## II. *Plaintiff's ADA Claim*

■ The Americans with Disabilities Act of 1990, as amended in the Civil Rights Amendments Act of 1991, 42 U.S.C. § 12101 *et seq.,* was designed to prohibit discrimination against disabled persons and enable those persons "to compete in the workplace and the job market based on the same performance standards and requirements expected of persons who are not disabled." *Harding v. Winn–Dixie Stores, Inc.,* 907 F.Supp. 386, 389 (M.D.Fla.1995). The terms of the statute provide that:

No covered entity shall discriminate against a qualified individual with a disability because of the disability of such individual in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment.

42 U.S.C. § 12112(a).

■ In order to establish a *prima facie* case of discrimination under the ADA, a plaintiff must show: (1) that she is a qualified individual with a disability; (2) who was unlawfully subjected to discrimination because of her disability. *Stewart v. Happy Herman's Cheshire Bridge, Inc.,* 117 F.3d 1278, 1285 (11th Cir.1997) (*citing Morisky v. Broward County,* 80 F.3d 445, 447 (11th Cir.

1996)). Because plaintiff presents no evidence which could lead a reasonable fact finder to conclude that she is either "disabled" or "qualified" as those terms are defined by the ADA, the Court grants defendant's motion for summary judgment without reaching the question whether plaintiff was unlawfully subjected to discrimination because of her disability.

### A. Plaintiff Is Not "Disabled"

■ Whether plaintiff has a disability under the terms of the ADA turns on a determination of whether she: (1) has a physical or mental impairment that substantially limits one or more of her major life activities; (2) has a record of such an impairment; or (3) is regarded as having such an impairment. *Stewart,* 117 F.3d at 1285. The applicable federal regulations define "impairment" to include "any physiological disorder, or condition ... affecting one or more of the following body systems: neurological, musculoskeletal, special sense organs, respiratory (including speech organs), cardiovascular, reproductive, digestive, genito-urinary, hemic and lymphatic, skin, and endocrine." 29 C.F.R. § 1630.2(h)(1) (1996).

■ Plaintiff correctly points out that stress and depression are conditions that *may or may not be* considered impairments under the Act, depending on whether these conditions result from a documented physiological or mental disorder. (Pl. Resp. to Def.Mot. for Summ.J. [11] at 8.) Plaintiff then completely fails, however, to establish or even argue that her own condition was of the type that *should* be considered an impairment. The only evidence plaintiff presents to suggest that her condition was an impairment is her statement that "[p]laintiff in this case suffered from stress, anxiety and depression and at relevant times was treated by Dr. Dudley for those disorders." (*Id.*) Plaintiff's conclusory assertions do not establish that she suffered from an impairment as defined by the ADA.

■ Even assuming that plaintiff's "stress-related condition" qualifies as a men-

tal impairment, plaintiff must do more than establish the existence of an impairment to demonstrate that she is disabled within the meaning of the ADA. *Pritchard v. Southern Co. Services,* 92 F.3d 1130, 1132, *amended on reh'g in part,* 102 F.3d 1118 (11th Cir.1996), *cert. denied,* —— U.S. ——, 117 S.Ct. 2453, 138 L.Ed.2d 211 (1997). Plaintiff's impairment only rises to the level of a disability if it substantially limits one or more of her major life activities; that is, if the impairment significantly restricts the duration, manner, or condition under which she can perform a particular major life activity as compared to the average person's ability to perform that same activity.[2] In making this determination, courts are directed to consider the "nature and severity of the impairment; the duration or expected duration of the impairment; and the permanent or long term impact, or the expected permanent or long term impact of or resulting from the impairment." 29 C.F.R. § 1630.2(j)(2).

■ The Court is unable to consider any of these factors in this case, however, because plaintiff does not explain the extent to which her "stress-related condition" affects her performance of any major life activity. The most severe impact the Court can glean from the record is that plaintiff's condition caused her to suffer stress, or experience some sort of "stress reaction", when she thought about going to work and interacting with members of defendant's management. (*See* Paleologos Depo. at 33.) The Court assumes that plaintiff is alleging that her condition substantially limited her performance of the major life activity of working. An individual is not substantially limited in the major life activity of working for purposes of the ADA, however, unless he is significantly restricted in his ability to perform either a class of jobs or a broad range of jobs within various classes. *Gordon v. E.L. Hamm & Assoc.,* 100 F.3d 907, 911–912 (11th Cir.1996); *Dewitt v. Carsten,* 941 F.Supp. 1232 (N.D.Ga.1996) (Carnes, J.),

*aff'd,* 122 F.3d 1079 (11th Cir.1997). Plaintiff cannot demonstrate that she is so limited.

■ Plaintiff's claim that she is disabled by her stress-related condition is similar to the claim that this Court recently considered in *Dewitt.* The plaintiff in *Dewitt,* who was employed as a jailhouse deputy, argued that she was disabled due to the stress she experienced from interacting with prison inmates, as well as her supervisor, the Sheriff. *Dewitt,* 941 F.Supp. at 1236. Noting that an impairment does not rise to the level of a disability under the ADA unless it substantially limits a major life activity, this Court rejected plaintiff's argument that she was substantially limited in the activity of working where her condition only restricted her performance of one job—that of a jailhouse deputy. *Id.* The Court concluded that plaintiff's job-induced stress did not constitute a disability under the ADA. *Id.* Likewise, plaintiff's stress condition, apparently triggered by the mere thought of interaction with defendant's management and work, in general, does not constitute a disability under the ADA.

Plaintiff's attempt to distinguish *Dewitt* is unpersuasive. Plaintiff contends that her case should not be governed by *Dewitt* because unlike the plaintiff in that case, plaintiff does not "seek a transfer, relocation, or restructuring of her position." (Pl.Resp. to Def.Mot. for Summ. J. [11] at 9.) While it is true that plaintiff requests, instead of a transfer or relocation, the right not to attend work at all for six weeks, this Court's reasoning in *Dewitt* is equally applicable to this case:

> Were the job-triggered stress that plaintiff describes as a disability sufficient to require her employer to [allow her 6 weeks off from work], it is likely that many other . . . employees, subject to the same job-related stresses, might also insist on similar accommodations, potentially leaving few employees available to work [for defendant].

*Dewitt,* 941 F.Supp. at 1236.

Moreover, plaintiff cannot survive summary judgment on her ADA claim simply by

---

**2.** The ADA Regulations define major life activities as "functions such as caring for oneself, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning, and working." 29 C.F.R. § 1630.2(I).

alleging in general and ambiguous terms that she suffers from some sort of "stress-related condition." This Court will not *assume* that plaintiff is disabled under the ADA because she "suffered from stress, anxiety and depression and at relevant times was treated by Dr. Dudley." (*See* Pl.Resp. to Def.Mot. for Summ. J. [11] at 8.) In order to succeed on a claim under the ADA, plaintiff must demonstrate both that she has an impairment, and that this impairment substantially limits her ability to perform a major life activity. Because plaintiff has not presented sufficient evidence to raise a question of fact as to either of these issues, the Court grants defendant's Motion for Summary Judgment on plaintiff's ADA claim.

## B. Plaintiff Is Not "Qualified" Under the ADA

Even if the Court had determined that plaintiff's stress-related condition rose to the level of a disability under the ADA, defendant would still be entitled to summary judgment, because plaintiff cannot show that she was a "qualified" individual at the time of her termination.[3] As noted above, plaintiff must demonstrate that she was a qualified individual at the time of her termination in order to bring a claim under the ADA. The ADA defines "qualified individual" as an individual "who, with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds or desires." 42 U.S.C. § 12111(8) (1994); 29 C.F.R. § 1630.2(m).[4]

In determining which functions of a job are deemed essential, the ADA allows for consideration of the employer's judgment. *Holbrook v. City of Alpharetta*, 112 F.3d 1522, 1526 (11th Cir.1997) (holding that ability to perform full-scale investigation, which plaintiff admittedly could not do because of his vision problem, is an essential function of detective's job.) The ADA regulations identify additional factors that may enter into this inquiry, including: (1) whether the position exists to perform the function; (2) whether performance of the function can be distributed to only a limited number of available employees; and (3) whether the function is highly specialized so that the incumbent in the position was hired for his or her expertise or ability to perform the particular function. 29 C.F.R. § 1630.2(n)(2)(i)–(iii) (1996).

Plaintiff's argument that she was qualified for the job of Director of Nursing when she was fired, much like her argument that she was disabled, rests entirely on her own unsupported assertion that "[p]laintiff's proven experience and ability, notwithstanding her medical condition, show plaintiff is capable of satisfactorily performing her managerial functions within the defendant's organization." (Pl.Resp. to Def.Mot. for Summ. J. [11] at 4.)

Yet, evidence in the record which plaintiff fails to rebut demonstrates that plaintiff was absent from work during 75% of the pay periods for which she worked for defendant. (*See* Exs. 13–42 to Paleologos Depo.) Moreover, plaintiff admits that she was not able to come to work even on a part-time basis when she began to experience her stress-related condition, because "simply the thought of

---

3. Plaintiff apparently does not even view this element as essential to her ADA claim, as in her response to defendant's motion for summary judgment she states that:

Plaintiff has established a *prima facie* case of disability discrimination by (1) showing that her disability limits a major life activity and constitutes a disability under the provisions of the Americans with Disabilities Act (ADA); (2) that she has suffered an adverse employment action by not being permitted continued employment with the defendant; (3) that based on the direct statements and communications made by members of defendant's management who were involved in the employment decisions, there is evidence of a causal connection

between the adverse employment action and the disability.

(Pl.Resp. to Def.Mot. for Summ. J. [11] at 6.)

4. *See Gonzales v. Garner Food Services, Inc.*, 89 F.3d 1523, 1527, *reh'g denied,* 104 F.3d 373 (11th Cir.1996), *cert. denied,* —— U.S. ——, 117 S.Ct. 1822, 137 L.Ed.2d 1030 (1997) (explaining that purpose of including phrase "essential functions" within definition of qualified individual is to "ensure that employers can continue to require that all employees, including those with disabilities, are able to perform the ... non-marginal functions of the job.").

having to go to work ... and interact with management personnel" induced a stress reaction. (Def.Mot. for Summ. J. [10] at 6 (citing Paleologos Depo. at 33).)

Plaintiff was only terminated when, after having experienced attendance problems throughout her employment with defendant, she demanded a six-week leave of absence for stress. Notwithstanding her "proven experience and ability," plaintiff's inability to attend work on a regular basis rendered her unqualified for the position of Director of Nursing. The Court concurs with its colleague Judge Shoob that the most essential function of any job, and a prerequisite to the performance of other essential functions, is attendance at work, for an employee who is absent can perform no function, essential or non-essential. *Allen v. GTE Mobile Communications Service Corp.*, 1997 WL 148670 *1 (N.D.Ga.1997) (Shoob, J.) (finding plaintiff's possession of requisite skill and experience irrelevant where panic attacks rendered her unable to perform "what is perhaps the most essential function of most jobs: attendance at work."); *Accord Tyndall v. Nat'l Education Centers*, 31 F.3d 209, 210 (4th Cir.1994) (holding that plaintiff's inability to meet attendance requirement precluded ADA claim); *Kelsey v. University Club of Orlando*, 845 F.Supp. 1526 (M.D.Fla.1994) (stress-induced "meltdowns" which caused inability to work necessary hours justified termination).

 Plaintiff contends, however, that she would have been able to perform the essential functions of her job had she been granted the "reasonable" accommodation which she requested: a six-week leave of absence for stress, and the ability to work at home. An employee who alleges that she would be able to perform the essential functions of her job with a reasonable accommodation has the burden of identifying an accommodation, as well as demonstrating that it is reasonable. *Willis v. Conopco, Inc.*, 108 F.3d 282, 283 (11th Cir.1997); *Stewart*, 117 F.3d at 1286. Generally, an employer is not required to accommodate a disability by allowing the disabled worker to work at home. *Vande Zande v. Wisconsin Dept. of Administration*, 44 F.3d 538, 544 (7th Cir.1995); *Whillock v. Delta Air Lines, Inc.*, 926 F.Supp. 1555, 1564–65 (N.D.Ga.1995) (Hull, J.). This is particularly true in this case, given plaintiff's responsibility for supervising the nursing staff and visiting treatment facilities, functions which obviously cannot be performed at home. Moreover, while an employer may be required to modify work schedules to accommodate a disabled employee, it is not required by the ADA to wait an indefinite period of time for the employee to be able to perform the essential functions of the job. *Duckett v. Dunlop Tire Corp.*, 120 F.3d 1222, 1224 (11th Cir.1997). *See also, Rogers v. Int'l Marine Terminals*, 87 F.3d 755 (5th Cir.1996) (employer not required by ADA to wait until disabled employee is able to appear for work).

 Also, an employee claiming that her employer violated the ADA by not providing her with a reasonable accommodation must identify an accommodation that actually would have allowed the employee to perform her job duties. *Willis v. Conopco*, 108 F.3d 282, 284–85 (11th Cir.1997). The ADA does not create a cause of action against an employer merely for its failure to investigate and determine whether reasonable accommodations exist. *Id.* at 285 (*quoting Moses v. American Nonwovens*, 97 F.3d 446, 448 (11th Cir.1996)). Plaintiff asserts in her deposition that defendant's management style caused her stress reaction, and that attending work and interacting with defendant's management exacerbated her condition. (Paleologos Depo. at 33, 38.) Given this fact, it is difficult to imagine how a six-week leave of absence would have enabled plaintiff to perform the essential function of attending work, which presumably would have induced a stress reaction as soon as plaintiff resumed her job duties.

This Court also rejects plaintiff's suggestion that defendant should have been required to grant plaintiff's six-week leave of absence merely because defendant had

granted a similar request by plaintiff in the past. Plaintiff contends that "by previously accommodating the plaintiff for a physical injury the defendant shows through its own actions the defendant can provide a reasonable accommodation," and therefore, should be required to provide that accommodation. (Pl.Resp. to Def.Mot. for Summ. J. [11] at 4.) This argument is contrary to Eleventh Circuit authority. *See Holbrook,* 112 F.3d at 1527–28 (holding that employer was not required to accommodate detective's inability to perform complete investigation of crime scene in the future merely because it had done so in the past).

Plaintiff in this case was, by her own admission, unable to attend work regularly when she was terminated. Moreover, she never identified an accommodation which any jury could find reasonable, or which would have, in any event, enabled her to perform the essential function of attending work on a regular basis. Thus, plaintiff was not a qualified employee at the time of her termination, and the Court grants summary judgment to defendant on plaintiff's ADA claim on this alternative ground.

### III. *Plaintiff's FMLA Claim*

Plaintiff's complaint originally included a claim under the Family Medical Leave Act ("FMLA"). In order to recover under the FMLA, a plaintiff must demonstrate that her employer hired at least 50 employees at, or within a 75–mile radius of, plaintiff's worksite. 29 U.S.C. § 2611(2)(B)(ii). Plaintiff admits that she "does not maintain a viable claim under the FMLA" because defendant does not employ at least 50 people at or within a 75–mile radius of plaintiff's former worksite. (Pl. Resp. to Def.Mot. for Summ. J. [11] at 11.) Accordingly, the Court grants defendant's motion for summary judgment on plaintiff's FMLA claim.

### IV. *Plaintiff's State Law Claims*

Because all the claims over which the Court had original jurisdiction now have been removed from the case due to the Court's decision to grant defendant's motion for summary judgment with respect to plaintiffs' federal claims, § 1367(c)(3) applies.[5] As the Supreme Court has observed, "a federal court should consider and weigh in each case, and at every stage of the litigation, the values of judicial economy, convenience, fairness, and comity in order to decide whether to exercise jurisdiction over a case brought in that court involving pendent state-law claims. When the balance of these factors indicates that a case properly belongs in state court, as when the federal-law claims have dropped out of the lawsuit in its early stages and only state-law claims remain, the federal court should decline the exercise of jurisdiction by dismissing the case without prejudice." *Carnegie–Mellon Univ. v. Cohill,* 484 U.S. 343, 350, 108 S.Ct. 614, 98 L.Ed.2d 720 (1988) (footnote omitted). *See also Hardy v. Birmingham Bd. Of Educ.,* 954 F.2d 1546, 1550 (11th Cir.1992).

The Court concludes that dismissal is appropriate in this case, because plaintiff's federal claims have been dismissed. Moreover, "[n]eedless decision of state law should be avoided both as a matter of comity and to promote justice between the parties, by procuring for them a surer-footed reading of applicable law. Certainly, if the federal claims are dismissed before trial, even though not insubstantial in a jurisdictional sense, the state claims should be dismissed as well." *United Mine Workers of America v. Gibbs,* 383 U.S. 715, 726, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966). Accordingly, the Court dismisses plaintiffs' remaining state law claims without prejudice.

### CONCLUSION

For the foregoing reasons, defendant's Motion for Summary Judgment is **GRANTED.**

---

5. This section provides that "[t]he district courts may decline to exercise supplemental jurisdiction over a claim under subsection (a) if the district court has dismissed all claims over which it has original jurisdiction." 28 U.S.C. § 1367(c)(3).