[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 16-10560
Non-Argument Calendar
_____

D.C. Docket No. 2:13-cv-02335-AKK

KIM A. MASON,
an individual,

Plaintiff-Appellant,

versus

UNITED PARCEL SERVICE CO INC,
a foreign corporation,
d.b.a. UPS,
UNITED PARCEL SERVICE INC.,
a foreign corporation,

Defendants-Appellees.

_____

Appeal from the United States District Court
for the Northern District of Alabama
_____

(January 10, 2017)

Before HULL, JORDAN and ROSENBAUM, Circuit Judges.

PER CURIAM:

Plaintiff-Appellant Kim Mason appeals the district court's grant of summary judgment in favor of Defendant-Appellee United Parcel Service, Inc. ("UPS") in her employment discrimination suit filed pursuant to the Americans with Disabilities Act ("ADA").  Mason also claims that the district court erred in denying her motion to strike certain errata sheets.  After review, we affirm.[1]

After Mason was injured on the job, her doctor imposed certain lifting restrictions that made her ineligible for the delivery truck driver position she held with UPS at the time of her injury.  This case involves whether Mason, as a union member, could have, with or without reasonable accommodation, performed the essential functions of certain other union positions within UPS, all of which also had lifting requirements.  Therefore, we begin by setting forth a detailed account of the undisputed evidence.

## I.    BACKGROUND

### A.    UPS's Operations

UPS is a package delivery company, moving millions of packages each day.  UPS runs its operations through a network of package centers.  UPS's larger

---

[1]We review a grant of summary judgment de novo, construing the facts and drawing all reasonable inferences in favor of the nonmoving party.  Holly v. Clairson Indus., LLC, 492 F.3d 1247, 1255 (11th Cir. 2007).  Summary judgment is appropriate only "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).

package centers are automated, but "conventional" package centers—like the one in Huntsville, Alabama where Mason worked—are not fully automated, meaning that some operations are done manually. The nearest automated building to Huntsville is in Memphis, Tennessee.

The majority of UPS employees, especially those working at package centers, are covered by a collective bargaining agreement ("CBA") between UPS and the International Brotherhood of Teamsters. When a union position becomes available at a package center, UPS will put up a bid sheet. Union employees who are interested in the position sign the bid sheet. The position is then offered to the employee on the bid sheet with the highest seniority. If that employee refuses the position, it is offered to the employee with the second-highest seniority, and so on. All union positions are filled through this bidding process.

Seniority for purposes of bidding on open union positions is determined by the employee's seniority date within their package center. In other words, if a union employee like Mason were to move to a new package center, she would enter as the employee with least seniority. The CBA prohibits employees from bumping or displacing other employees from the union jobs they occupy. While there is an exception to UPS's bidding-seniority system for accommodations under the ADA, Mason told UPS that she only wanted to be considered for positions in and around Huntsville.

3

**B.    The MAPP Process**

At all relevant times, employees who sought management positions at UPS were required to go through the company's "Management Assessment and Promotion Process" or "MAPP."  To start the process, the employee was required to submit a written letter of interest to UPS, and this letter had to be submitted for every year that an employee wished to be considered for a management position. Letters of interest expired every December 31.

After an employee submitted a letter, the employee's supervisor would conduct an initial assessment, which involved scoring the employee's performance in a number of relevant areas.  If an employee passed the initial assessment, the employee would progress through a number of steps in the MAPP process.  Only employees who successfully completed the MAPP process could be placed in the "promotion pool for that calendar year" and be eligible for consideration for promotion from a union position to a non-union management position.

**C.    Mason's Employment with UPS**

In 1994, Mason began working for UPS as a "pre-loader," a part-time position that entails loading packages onto UPS's delivery trucks.  Mason always worked at UPS's Huntsville Package Center and was always a union employee.  In

4

the early 2000s, Mason became a full-time delivery truck driver.  Mason has never held a management position at UPS.

On March 22, 2011, Mason fell off the back of her delivery truck and injured her wrist.  Dr. James Martens, the doctor who performed surgery on Mason's wrist, concluded that she reached maximum medical improvement ("MMI") in October 2011.

## D.    ADA-Accommodation Process

In early 2012, at UPS's invitation, Mason requested accommodation for her alleged disability under the ADA.[2]  In January 2012, Dr. Martens completed a "Request for Medical Information" form, which indicated that Mason was not able to perform all the functions of her current driver position.  Dr. Martens's form noted that Mason was unable to: "(1) lift, lower, push, pull, leverage and manipulate equipment and or packages weighing up to 70 pounds[,] (2) [a]ssist in moving packages weighing up to 150 pounds[, and] (3) [l]ift packages to heights above the shoulder and lower to foot level."  Dr. Martens determined that Mason had a permanent 25-pound lifting restriction, but that she could lift 10 pounds occasionally.  Those restrictions have not changed.

On February 10, 2012, as part of UPS's ADA-accommodation process, Mason met with Tammy Butler and Doreen Ingle, both from UPS's Human

---

[2]UPS has an "established ADA procedure" to handle employee requests for reasonable accommodation, and Mason's request was handled in accordance with this process.

Resources ("HR") department, and Lois Forsmo, an occupational health nurse with UPS. This is commonly known as a "checklist meeting" because the employee is asked to complete an accommodation checklist form.

As part of that meeting, Mason filled out Part A of UPS's "Accommodation Checklist." On that form, Mason stated that she could be accommodated by obtaining a position without the requirement of lifting "heavy" packages, specifically noting management, training, and package center supervisor positions. As to other jobs Mason believed she could do with or without accommodation, Mason identified the following: "air driver, customer counter, clerk, office, safety, preload, spa, decap, dispatch, local sort smalls, overgoods, office clerk, porter[,] car wash, misloads, hazmat." Mason described her prior 17-year work experience at UPS and noted she had previously done most of the jobs listed.

On behalf of UPS, Ingle[3] filled out Part B of the Accommodation Checklist form.[4] With respect to Mason's current job as a delivery truck driver, Ingle identified the "proposed accommodation[s]" of (1) no lifting of packages weighing more than 25 pounds, (2) no lifting above the shoulder, and (3) no lifting or

---

[3]At that time, Ingle was the company's Area HR Manager assigned to Mason's ADA accommodation request.

[4]While Butler attended the meeting in person with Mason, Ingle and Forsmo participated via telephone. Accordingly, Mason testified that she did not see Part B of the form at the checklist meeting.

lowering packages weighing up to 70 pounds.  Ingle indicated that, for these restrictions, no means existed to make the requested accommodation.

Next, Ingle identified these potential positions, to which Mason could be reassigned, as an accommodation: air driver, customer counter, preload, smalls, porter, carwash, office, and clerk.  Ingle noted that (1)  Mason had the "education, skills, and experience" ("ESE") for all of the positions, but (2) none of these positions were currently open or would be vacant within a reasonable period of time.  The form asked:

> Does the employee preliminarily appear capable of performing the essential job functions ("EJF") of this position with or without reasonable accommodation?

Under EJF, Ingle put "Yes" as to each position and underlined the word "with" in the form question.  Ingle underlined the word "with" because it was her preliminary determination that Mason could perform the essential functions of these jobs with reasonable accommodations.  In her declaration, Ingle stated that she "completed Section B to indicate that Ms. Mason preliminarily appeared capable of performing the essential job functions of certain positions . . . but this was not a final conclusion."

On the checklist form, Ingle also identified additional accommodations not identified by Mason, specifically noting that Mason could work in supervision, "once qualified."  Ingle noted that means existed to make this accommodation,

7

once Mason was qualified, and that it would not conflict with the CBA. Ingle stated that she had explained the MAPP process to Mason.[5]

After the meeting, Ingle sent the checklist form to Forsmo. According to Forsmo's declaration, "[t]hereafter, it was determined that, based on Ms. Mason's restrictions as reported by Ms. Mason and her doctor, there were no positions available for which Ms. Mason was qualified and capable of performing the essential job functions with or without reasonable accommodation." This determination was made by UPS's ADA committee, and was not a final decision made by Ingle alone.

On April 3, 2012, Ingle sent Mason a letter informing Mason that UPS was not aware of "any available position at UPS at this time for which you are qualified and capable of performing the essential job functions with or without reasonable accommodation," and stating that UPS would continue to look for such a position for up to six months. During the next six months, Ingle "periodically" inquired as to whether there were any available positions at the Huntsville facility that Mason could perform with her physical restrictions. But no such positions became available during that six-month period.

In her deposition, Mason stated that, after she received the April 3, 2012 letter, she spoke with Ingle on "[n]umerous" occasions "on a pretty regular basis"

---

[5]Mason had submitted letters of interest to initiate the MAPP process in several years prior to 2012, but her paperwork was not current at the time of the checklist meeting.

8

to ask if UPS had found any available positions and/or to inform Ingle of a potential position. Ingle reminded Mason several times about the MAPP process and that all employees needed to complete this process to be eligible for management positions. According to Ingle, Mason asked her at one point about available Clerk and Customer Counter Clerk positions at the Huntsville center, but Ingle informed her that these positions required lifting "well in excess of her medical limitation of 25 pounds."

On September 13, 2012, Mason sent Ingle two letters. One was Mason's request to be considered for the MAPP process. The second was a letter noting the history of the case and stating that:

> Since April I have contacted you several times, by phone, to inquire if there have been any positions open and to suggest positions that were open or changing that I may be eligible for. To date I still have not received any suggestions for reasonable accommodations in accordance with the [ADA] from [UPS].

Mason also stated that there were two positions currently open at the Huntsville facility for "Package Center Clerks" that "do not handle packages" and were listed on the Accommodation Checklist.

According to UPS, however, these two positions were not union positions but were, rather, management positions. As Mason had not completed the MAPP process, and was not in the "MAPP pool" of candidates, Mason was not qualified to be considered for these positions.

9

In October 2012, Mason underwent an initial assessment as part of the MAPP process, where her supervisor, Jeff Hill, assessed her performance. Hill gave her a score of between 2 and 3, and a score of 3.5 was required to pass the initial assessment. Because Mason did not complete the MAPP process, Mason was never eligible for consideration for promotion to a supervisory position in 2012. In her deposition, Mason accused Hill of discriminating against her on the basis of her disability by giving her a low score on the initial assessment. Hill denied this accusation. To this Court's knowledge, Mason remains an inactive employee of UPS.

## E.     Jobs that Came Available at the Huntsville Package Center During the Relevant Time Period

From February 2012 to April 2013 (the "Relevant Time Period")[6], the Huntsville facility had three openings for union positions: (1) preloader, (2) clerk, and (3) air driver.

Preloaders are responsible for moving packages through the package centers and loading those packages onto delivery trucks. The written job description requires preloaders to push and pull packages weighing 21 to 50 pounds unassisted, lift and carry packages weighing 21 to 70 pounds unassisted, and move packages weighing up to 150 pounds.

---

[6]In its "Supplemental Response to Plaintiff's Discovery," UPS identified this as the "Response Period." Mason has not disputed this. The record reflects that Mason filed a grievance with the union, which was denied in April 2013.

Customer Counter Clerks staff the front counter and are responsible for receiving and processing packages from customers. Center Clerks handle damaged packages, rewrap and repackage damaged packages, and correct labeling errors. The written job description for both clerk positions requires the employee to (1) lift, lower, push, pull, leverage and manipulate equipment and/or packages weighing up to 70 pounds; (2) assist in moving packages weighing up to 150 pounds; (3) lift packages to heights above the shoulder; and (4) lower packages to foot level.

Air Drivers pick up and deliver next-day air packages. The written job description for this position also requires the employee to (1) lift, lower, push, pull, leverage and manipulate equipment and/or packages weighing up to 70 pounds; (2) assist in moving packages weighing up to 150 pounds; (3) lift packages to heights above the shoulder; and (4) lower packages to foot level.

Additionally, a UPS official stated that "[m]anipulating and lifting packages are core functions of [all these] positions . . . all of which entail the constant handling of packages throughout the workday." The Huntsville facility is one of UPS's smaller package centers, and it is "leanly staffed." Therefore, "[i]f an employee is unable or refuses to perform all of his or her required job functions, including lifting packages without assistance within the weight requirements of the position, the operation could be interrupted, resulting in potential service failures."

11

UPS does not have permanent light-duty work assignments. In short, the stated lifting requirements for all three jobs fell outside Dr. Marten's assessment of Mason's lifting restrictions.

In addition to these positions, Mason listed these jobs on her Accommodation Checklist: office, safety, spa, decap, dispatch, local sort smalls, overgoods, porter, car wash, misloads, and hazmat. Most of these are not discrete positions but are, instead, tasks performed by other employees.[7] Porter and Car Wash are, however, discrete union positions. But neither of these positions became available during the Relevant Time Period.

In her declaration, Mason averred that "[s]ome of the positions [she listed on the checklist form] do not even require lifting heavy packages even though the essential functions of the job may indicate that, including small sort and customer clerk, and clerk." Mason also stated that she was "personally aware of employees receiving help lifting packages that are heavy[,] including the positions of customer clerk and clerk positions [sic]." Mason claims that she requested those

---

[7]For example, "small sort" is a function performed by the Loader/Unloader. At the Huntsville facility, Loaders/Unloaders who work on the small sort operation must be able to lift, manipulate, and carry containers or bags, and the containers and bags typically weigh more than 25 pounds. "Spa" and "misloads" refer to two of the functions Loaders/Unloaders and Preloaders can perform. A Loader/Unloader, Preloader, or Clerk who is certified to do so may also handle hazardous materials ("hazmat"). A Clerk may also handle overgoods, a reference to package contents that have been displaced from the package in some way. "Office" duties are typically performed by management, as are "dispatch" and "safety" duties. Mason testified that she did not remember what she meant by "decap."

12

positions specifically because they do not "actually require" heavy lifting or because she would receive help in lifting packages.

Martha Pender filled the open clerk position that became available at the Huntsville facility during the Relevant Time Period.  Pender executed a declaration stating that she "sometimes" has to move "heavy" packages as part of her job. Pender stated that she can move these packages by doing a "team lift" with other people, pushing them out of the way so that other workers may move them, or getting assistance from other employees to move the packages.  In addition, customers with heavy packages will place the packages directly on the counter, and hand trucks are "readily available for assistance with heavy packages."  Pender claimed that "[o]ther clerks also receive assistance with heavier packages as needed."  According to Pender's experience, the positions of clerk and customer clerk do not "typically require lifting heavy items," and they may obtain assistance when heavy lifting is required.  Pender also claimed that the position of "small sorter" also does not require heavy lifting.

During the Relevant Time Period, the Huntsville facility had two non-union supervisory positions become available.  Because no current UPS employees at the Huntsville facility, including Mason, had successfully completed the MAPP process, UPS hired two outside candidates.

13

## F.     Mason's ADA lawsuit

On December 27, 2013, Mason filed this complaint, alleging that UPS discriminated against her based on her disability, in violation of the ADA.[8]  Mason alleged that UPS refused to accommodate her and failed to contact her with "any offers or suggested openings within the company which were available or potentially available."

Following discovery, UPS moved for summary judgment, arguing, inter alia, that Mason's ADA claim was barred because she was not a "qualified individual" under the statute.  Mason filed a motion to strike the deposition errata sheets of White, Ingle, and Butler, arguing that the attorney-authored "clarifications" violated Federal Rule of Civil Procedure 30(e).

The district court granted UPS's motion for summary judgment and dismissed the case with prejudice.[9]  While UPS had conceded that Mason is disabled under the ADA, the district court determined that she was not a "qualified

---

[8]Mason also raised claims of intentional infliction of emotional distress, negligent infliction of emotional distress, age discrimination, and gender discrimination.  The district court dismissed the negligent infliction of emotional distress claim under Fed. R. Civ. P. 12(b)(6), noting Mason's concession that that it is not a cause of action under Alabama law.  The district court dismissed Mason's age and gender discrimination claims without prejudice, based on a joint stipulation by the parties.  Finally, the district court granted summary judgment to UPS on Mason's intentional infliction of emotional distress claim.  On appeal, Mason does not argue that the district court incorrectly ruled on these claim and, thus, she has waived any such argument. See Hamilton v. Southland Christian Sch., Inc., 680 F.3d 1316, 1318-19 (11th Cir. 2012).

[9]As Mason had admitted that she was never an employee of the named defendant United Parcel Service Co., Inc., the district court granted summary judgment to that defendant as well. On appeal, Mason does not dispute the grant of summary judgment as to that separate defendant.

14

individual" under the statute because there was no genuine issue of material fact as to whether Mason could perform the essential functions of the positions that became available at the Huntsville facility during the Relevant Time Period, with or without reasonable accommodation.

The district court also denied Mason's motion to strike the deposition errata sheets because (1) the errata sheets complied with Rule 30(e)'s requirement to "list the changes and the reasons given by the deponent for making them"; (2) UPS acknowledged that certain positions became available during the relevant period; and (3) in any event, the district court explicitly stated that it did not rely on "the employees' testimony here when making its determination on the motion for summary judgment."

## II.    RELEVANT LAW

Under the ADA, an employer may not discriminate against a qualified individual with a disability.  42 U.S.C. § 12112(a).  To establish a prima facie case of discrimination under the ADA, a plaintiff must show: (1) she is disabled; (2) she is a qualified individual; and (3) she was subjected to unlawful discrimination because of her disability.  Holly v. Clairson Indus., LLC, 492 F.3d 1247, 1255-56 (11th Cir. 2007).   In the district court, the parties agreed that Mason was disabled, but contested the second and third elements of the prima facie case.

15

A "qualified individual" is one who, "with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds or desires." 42 U.S.C. § 12111(8). In other words, the plaintiff must show that she "can perform the essential functions of [her] job without accommodation, or, failing that, show that [she] can perform the essential functions of [her] job with a reasonable accommodation." Davis v. Fla. Power & Light Co., 205 F.3d 1301, 1305 (11th Cir. 2000). If the plaintiff cannot perform the essential functions of her job even with an accommodation, by definition she is not a qualified individual under the ADA. Id.

We evaluate whether a function is essential on a case-by-case basis by examining a number of factors. Holly, 492 F.3d at 1258. An essential function is a fundamental job duty of a position, and does not include marginal functions of the position. Earl v. Mervyns, Inc., 207 F.3d 1361, 1365-66 (11th Cir. 2000), see also 29 C.F.R. § 1630.2(n)(1). In determining if a task is an essential function, relevant evidence may include: (1) the employer's judgment as to what functions are essential, (2) a written job description, (3) the amount of time spent on the job performing the function, (4) the consequences of not requiring the employee to perform the function, (5) the terms of a collective bargaining agreement, (6) the work experience of past employees in the position, and (7) the current work experience of employees in similar jobs. 29 C.F.R. § 1630.2(n)(3). We give

16

substantial weight to an employer's judgment about which functions are essential, although this factor alone is not conclusive. Holly, 492 F.3d at 1258.

As to the discrimination prong, discrimination under the ADA includes the failure to make a reasonable accommodation to the known physical or mental limitations of the individual. 42 U.S.C. § 12112(b)(5)(A); Holly, 492 F.3d at 1262 (explaining that "an employer's failure to reasonably accommodate a disabled individual itself constitutes discrimination under the ADA, so long as that individual is 'otherwise qualified,' and unless the employer can show undue hardship").

The plaintiff bears the burden both to identify an accommodation and show that it is reasonable. Willis v. Conopco, Inc., 108 F.3d 282, 284-86 (11th Cir. 1997). Once the plaintiff has met her burden of proving that reasonable accommodations exist, the defendant-employer may present evidence that the plaintiff's requested accommodation imposes an undue hardship on the employer. Id. at 286.

Accommodations are "[m]odifications or adjustments to the work environment, or to the manner or circumstances under which the position . . . is customarily performed . . . ." 29 C.F.R. § 1630.2(o)(1)(ii). The ADA, however, does not require an employer to accommodate an employee in the manner she desires, nor is the employer required to "transform the position into another one by

17

eliminating functions that are essential to the nature of the job as it exists." Lucas v. W.W. Grainger, Inc., 257 F.3d 1249, 1260 (11th Cir. 2001); see also Stewart v. Happy Herman's Cheshire Bridge, Inc., 117 F.3d 1278, 1285-86 (11th Cir. 1997).

## III.   DISCUSSION

The district court correctly determined that Mason did not meet her burden to show a prima facie case of discrimination under the ADA and, thus, the court properly granted summary judgment for UPS. See Lucas, 257 F.3d at 1255. The parties agree that Mason is disabled under the ADA. The only union positions that became available during the Relevant Time Period were the preloader, clerk, and air driver positions. But, critically, Mason failed to establish that she is a "qualified individual" under the ADA because she did not demonstrate that she could perform the essential functions of these positions with or without reasonable accommodation.[10] See 42 U.S.C. § 12111(8); Davis, 205 F.3d at 1305.

According to Dr. Martens, Mason's medical restrictions prohibited her from lifting packages above the shoulder or lowering them to foot level. Mason was

---

[10]Mason does not contest that her lifting restrictions foreclosed her continued employment as a delivery truck driver. Moreover, to the extent that Mason argues that UPS should have awarded her a non-union supervisory position, it is undisputed that Mason did not qualify for such a position through the MAPP process. "The ADA does not mandate that employers promote disabled employees in order to accommodate them." Lucas, 257 F.3d at 1257 (citation omitted). Additionally, the other union positions that Mason listed on the Accommodation Checklist either did not exist as an independent position or did not become available during the Relevant Time Period. See Willis, 108 F.3d at 284 (citation omitted) ("Reassignment to another position is a required accommodation only if there is a vacant position available for which the employee is otherwise qualified.").

18

allowed to occasionally lift 10 pounds, but was prohibited from lifting more than 25 pounds. It is undisputed that, according to UPS's lists of essential job functions, each of these positions required frequent or occasional lifting of weights outside of Mason's stated limitations. The determination by UPS that these are essential functions of the positions is entitled to substantial weight. See Holly, 492 F.3d at 1258. To circumvent this problem, Mason relies on two pieces of evidence.

First, Mason points to Ingle's determination on Part B of the Accommodation Checklist form that Mason could perform the essential functions of the positions identified with reasonable accommodation. However, Mason ignores that the form itself states that the determination is preliminary. Moreover, the record establishes that Ingle's determination was not final and she did not have the sole authority to determine whether Mason was eligible for a reasonable accommodation. Thus, Mason's argument that Ingle's preliminary determination was never "altered, amended, adjusted, or otherwise modified"[11] misses the mark because UPS made a final determination that Mason's lifting restrictions made her unable to perform the essential functions of the positions, with or without reasonable accommodation. UPS timely informed Mason of this final

---

[11]Mason repeatedly complains about Ingle's purported failure to notify Mason that her preliminary assessment was altered or changed. But Mason was not aware of Ingle's notations on Part B of the checklist form until approximately five months after UPS notified her in April 2012 of its final determination regarding her ADA accommodation request.

19

determination and continued to search for jobs she could perform.  For these reasons, Ingle's preliminary determination is insufficient to create a genuine dispute of material fact.

Second, Mason relies on Pender's declaration (supplemented by Mason's own declaration) to contend that lifting packages outside Dr. Marten's stated restrictions was only a "marginal" and "infrequent" function of the clerk position, and that Mason could receive assistance from other employees for packages above her lifting restrictions.[12]

As the district court properly found, Mason has presented no evidence rebutting the written job descriptions' requirement that clerks must lift packages above their shoulders or lower them to foot level, two actions that Dr. Martens determined Mason could not do because of her impairments.  Beyond that, the district court correctly pointed out that neither Mason nor Pender defined what constitutes a "heavy" package.  While we must draw all reasonable inferences in Mason's favor, Holly, 492 F.3d at 1255, it is not reasonable to infer that "heavy" encompasses all packages over Mason's maximum lifting limit of 25 pounds.  And the ADA does not require UPS to place Mason in a clerk position and remove the

---

[12]Because Pender's declaration only pertains to the clerk position and Mason provides only one line of argument in her brief regarding the preloader position (and no argument whatsoever regarding the air driver position), this Court will deem any argument regarding the preloader and air driver position to be abandoned.  Timson v. Sampson, 518 F.3d 870, 874 (11th Cir. 2008).  In any event, in the absence of any evidence to the contrary, it is unrebutted that UPS's written job description for both of these functions require lifting outside of Mason's stated restrictions.

duty to lift packages weighing more than 25 pounds or to assist in moving packages over 150 pounds, as that would essentially transform the position into another one by eliminating essential functions of the job as it exists. See Lucas, 257 F.3d at 1260.

Mason's purported reliance on other UPS employees to assist with "heavy" packages and her contention that her lifting restrictions would not significantly disrupt the package center are also unavailing. Mason's restrictions would require her to leave every package weighing more than 25 pounds and some packages weighing between 10 and 25 pounds for other employees to deal with. Given that evidence in the record reflects that the Huntsville center is small and leanly staffed, and requires all employees to perform their functions, Pender's testimony is again insufficient to create a genuine factual dispute regarding the impact requiring another employee to assist Mason with any package weighing more than 25 pounds would have on the package center's operations. Thus, this requested accommodation is not reasonable.[13] See Lucas, 257 F.3d at 1260; Willis, 108 F.3d at 284-86.

---

[13]To the extent Mason argues that UPS has not shown that accommodating her would cause it "undue hardship," the burden shifts to UPS only after the plaintiff has met her burden of proving that reasonable accommodations exist, which Mason has not done. Willis, 108 F.3d at 286. Mason's allegations that UPS failed to "engage in a bone fide 'interactive process'" are also unfounded. The record evidence demonstrates that UPS invited Mason to enter into an ADA-accommodation process and followed its procedures in evaluating her restrictions and determining whether or not it could offer her a position, with or without reasonable accommodation, within those restrictions.

Ultimately, Mason has not established a genuine dispute of material fact as to whether she could fulfill the essential functions of the jobs that came available during the Relevant Time Period with or without a reasonable accommodation. See Davis, 205 F.3d at 1305. Without this showing, she is, by definition, not a qualified individual under the ADA, and the district court's grant of summary judgment in favor of UPS was appropriate. See id.

We also affirm the district court's denial of Mason's motion to strike the deposition errata sheets because its conclusion was not an abuse of discretion. See Benson v. Tocco, Inc., 113 F.3d 1203, 1208 (11th Cir. 1997) (reviewing a decision regarding a motion to strike evidence for an abuse of discretion). The district court's determination that the errata sheets were merely "clarifications" was not a clear error in judgment, as the changes were consistent with other evidence presented by UPS, which noted in several instances that three positions came open during the Relevant Time Period, but none were positions that Mason could perform with or without reasonable accommodation. See id. Moreover, the district court explicitly stated that it did not use the changed answers in making its summary judgment determination.

**AFFIRMED.**

22